1 | KAREN P. HEWITT
  | United States Attorney
2 | WILLIAM A. HALL, JR.
  | Assistant U.S. Attorney
3 | California State Bar No. 253403
  | United States Attorney's Office
4 | 880 Front Street, Room 6293
  | San Diego, California 92101-8893
5 | Telephone: (619) 557-7046/(619) 235-2757 (Fax)
  | Email: william.a.hall@usdoj.gov
6 |
  | Attorneys for Plaintiff
7 | United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1190-JM |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) | DATE: June 20, 2008 |
|  | ) | TIME: 2:00 p.m. |
| v. | ) | Before Honorable Jeffrey T. Miller |
|  | ) |  |
| JOSE LUIS VELASCO-ACEVEDO, | ) | UNITED STATES' STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |
|  | ) |  |
|  | ) |  |
| Defendant(s). | ) |  |

**I**

**STATEMENT OF THE CASE**

The Defendant, Jose Luis Velasco-Acevedo (hereinafter "Defendant"), was charged by a grand jury on April 26, 2008, with violating 8 U.S.C. §§ 1326(a) and (b), attempted entry after deportation. Defendant was arraigned on the Indictment on April 17, 2008, and entered a plea of not guilty.

**II**

**STATEMENT OF FACTS**

Defendant was apprehended on April 2, 2008, by Customs and Border Protection ("CBP") Officers at the San Ysidro, California Port of Entry. There, at approximately 8:45 p.m. that night,

3

1  Defendant made application for admission into the United States via the pedestrian inspection lane.
2  During primary inspection before a United States Customs and Border Protection ("CBP") Officer,
3  Defendant presented a Permanent Resident Card (I-551) belonging to another person, namely,
4  David Ponciano Heredia. The CBP Officer noted dissimilarities between the picture on the card
5  and Defendant and, believing Defendant was an imposter to the document presented, referred
6  Defendant to secondary for a more thorough inspection.

7  At secondary inspection, CBP Officers used Defendant's fingerprints to perform a
8  computerized check of Defendant's criminal and immigration history, revealing him to be a
9  previously deported criminal alien. In a post-<u>Miranda</u> statement, Defendant admitted to being a
10 citizen and national of Mexico without any immigration documents allowing him to enter or
11 remain in the United States legally. He further admitted that he has been previously removed from
12 the United States, and admitted that he has never applied for permission to re-enter the United
13 States since his removal. Defendant stated he purchased the Permanent Resident Card for $20.00
14 from a woman in Tijuana, Mexico. Notably, Defendant admitted that the woman told him that the
15 card was genuine, albeit not Defendant's card. Defendant stated that the woman told him to
16 present the card at pedestrian inspection, and that she would follow him a few feet behind,
17 obtaining the card after he made a successful entry.

18 **B.    DEFENDANT'S CRIMINAL AND IMMIGRATION HISTORY**

19 Preliminary criminal history reports show that Defendant has a felony conviction in
20 California. Defendant was convicted in 1985 in Los Angeles of Robbery With a Firearm, in
21 violation of Cal. PC § 211; he was sentenced to seven years incarceration. Defendant was also
22 convicted of misdemeanor driving under the influence in 1978.

23 Defendant's was last removed to Mexico on March 15, 1990.

24 //
25 //
26 //
27
28                                                                 4                      08CR1190-JM

# III

# MEMORANDUM OF POINTS AND AUTHORITIES

## A. THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED

Defendant moves to dismiss the indictment against him for alleged errors in the instructions given to the indicting grand jury during its impanelment by the Honorable Larry A. Burns on January 10, 2007. The United States explicitly incorporates by reference its extensive briefing on this issue submitted in United States v. Renovato, 07CR3413-BEN, and United States v. Barron-Galvan, 07CR3469-H. This motion has been denied by each and every court in this district that has considered it, and should also be denied in this case. The United States would be happy to supplement its response and opposition to this motion at the Court's request.

## B. DISCOVERY REQUESTS AND MOTION TO PRESERVE EVIDENCE

### 1. The Government Has or Will Disclose Information Subject To Disclosure Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure

The government has disclosed, or will disclose well in advance of trial, any statements subject to discovery under Fed. R. Crim. P. 16(a)(1)(A) (substance of Defendant's oral statements *in response to government interrogation*) and 16(a)(1)(B) (Defendant's relevant written or recorded statements, written records containing substance of Defendant's oral statements *in response to government interrogation*, and Defendant's grand jury testimony).

#### a. The Government Will Comply With Rule 16(a)(1)(D)

Defendant has already been provided with his or her own "rap" sheet and the government will produce any additional information it uncovers regarding Defendant's criminal record. Any subsequent or prior similar acts of Defendant that the government intends to introduce under Rule 404(b) of the Federal Rules of Evidence will be provided, along with any accompanying reports, at a reasonable time in advance of trial.

//

b. <u>The Government Will Comply With Rule 16(a)(1)(E)</u>

The government will permit Defendant to inspect and copy or photograph all books, papers, documents, data, photographs, tangible objects, buildings or places, or portions thereof, that are material to the preparation of Defendant's defense or are intended for use by the government as evidence-in-chief at trial or were obtained from or belong to Defendant.

Reasonable efforts will be made to preserve relevant physical evidence which is in the custody and control of the investigating agency and the prosecution, with the following exceptions: drug evidence, with the exception of a representative sample, is routinely destroyed after 60 days, and vehicles are routinely and periodically sold at auction. Records of radio transmissions, if they existed, are frequently kept for only a short period of time and may no longer be available. Counsel should contact the Assistant United States Attorney assigned to the case two weeks before the scheduled trial date and the Assistant will make arrangements with the case agent for counsel to view all evidence within the government's possession.

c. <u>The Government Will Comply With Rule 16(a)(1)(F)</u>

The government will permit Defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, that are within the possession of the government, and by the exercise of due diligence may become known to the attorney for the government and are material to the preparation of the defense or are intended for use by the government as evidence-in-chief at the trial. Counsel for Defendant should contact the Assistant United States Attorney assigned to the case and the Assistant will make arrangements with the case agent for counsel to view all evidence within the government's possession.

d. The Government Will Comply With Its Obligations Under <u>Brady v. Maryland</u>

The government is well aware of and will fully perform its duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory

1  evidence within its possession that is material to the issue of guilt or punishment. Defendant,
2  however, is not entitled to all evidence known or believed to exist that is, or may be, favorable to
3  the accused, or that pertains to the credibility of the government's case. As stated in United States
4  v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

7  611 F.2d at 774-775 (citations omitted). See also United States v. Sukumolachan, 610 F.2d 685,
8  687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not
9  exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any
10 pretrial privileges not contained in the Federal Rules of Criminal Procedure).

        e.     Discovery Regarding Government Witnesses

           (1)    Agreements. The government has disclosed or will disclose the terms of any agreements by Government agents, employees, or attorneys with witnesses that testify at trial. Such information will be provided at or before the time of the filing of the Government's trial memorandum.[1/] The government will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972).

           (2)    Bias or Prejudice. The government has provided or will provide information related to the bias, prejudice or other motivation to lie of government trial witnesses as required in Napue v. Illinois, 360 U.S. 264 (1959).

           (3)    Criminal Convictions. The government has produced or will produce any criminal convictions of government witnesses plus any *material* criminal acts which did not result in conviction. The government is not aware that any prospective witness is under criminal investigation.

---

[17] As with all other offers by the government to produce discovery earlier than it is required to do, the offer is made without prejudice. If, as trial approaches, the government is not prepared to make early discovery production, or if there is a strategic reason not to do so as to certain discovery, the government reserves the right to withhold the requested material until the time it is required to be produced pursuant to discovery laws and rules.

1  (4) <u>Ability to Perceive.</u> The government has produced or will produce any evidence that the ability of a government trial witness to perceive, communicate or tell the truth is impaired or that such witnesses have ever used narcotics or other controlled substances, or are alcoholics.

(5) <u>Witness List.</u> The government will endeavor to provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the government's trial memorandum is filed, although delivery of such a list is not required. See <u>United States v. Dischner</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Culter</u>, 806 F.2d 933, 936 (9th Cir. 1986); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible government witnesses. See <u>United States v. Thompson</u>, 493 F.2d 305, 309 (9th Cir. 1977), <u>cert. denied</u>, 419 U.S. 834 (1974). Defendant has already received access to the names of potential witnesses in this case in the investigative reports previously provided to him or her.

(6) <u>Witnesses Not to Be Called.</u> The government is not required to disclose all evidence it has or to make an accounting to Defendant of the investigative work it has performed. <u>Moore v. Illinois</u>, 408 U.S. 786, 795 (1972); see <u>United States v. Gardner</u>, 611 F.2d 770, 774-775 (9th Cir. 1980). Accordingly, the government objects to any request by Defendant for discovery concerning any individuals whom the government does not intend to call as witnesses.

(7) <u>Favorable Statements.</u> The government has disclosed or will disclose the names of witnesses, if any, who have made favorable statements concerning Defendant which meet the requirements of <u>Brady</u>.

(8) <u>Review of Personnel Files.</u> The government has requested or will request a review of the personnel files of all federal law enforcement individuals who will be called as witnesses in this case for <u>Brady</u> material. The government will request that counsel for the appropriate federal law enforcement agency conduct such review. <u>United States v. Herring</u>, 83

1  F.3d 1120 (9th Cir. 1996); see, also, United States v. Jennings, 960 F.2d 1488, 1492 (9th Cir.
2  1992); United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).
3  Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v.
4  Cadet, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable
5  to the defense that meets the appropriate standard of materiality . . ." United States v. Cadet, 727
6  F.2d at 1467, 1468. Further, if counsel for the United States is uncertain about the materiality of
7  the information within its possession in such personnel files, the information will be submitted to
8  the Court for in camera inspection and review.

9  (9)  Government Witness Statements. Production of witness statements
10 is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies
11 on direct examination. United States v. Taylor , 802 F.2d 1108, 1118 (9th Cir. 1986); United States
12 v. Mills, 641 F.2d 785, 790 (9th Cir. 1981)). Indeed, even material believed to be exculpatory and
13 therefore subject to disclosure under the Brady doctrine, if contained in a witness statement subject
14 to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under
15 the Act. See United States v. Bernard, 623 F.2d 551, 556-57 (9th Cir. 1979).
16 The government reserves the right to withhold the statements of any particular witnesses
17 it deems necessary until after the witness testifies. Otherwise, the government will disclose the
18 statements of witnesses at the time of the filing of the government's trial memorandum, provided
19 that defense counsel has complied with Defendant's obligations under Federal Rules of Criminal
20 Procedure 12.1, 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse
21 Jencks" statements at that time.

f.  The Government Objects To The Full Production Of Agents' Handwritten Notes At This Time

24 Although the government has no objection to the preservation of agents' handwritten notes,
25 it objects to requests for full production for immediate examination and inspection. If certain

28                                    9                          08CR1190-JM

1  rough notes become relevant during any evidentiary proceeding, those notes will be made
2  available.

3  Prior production of these notes is not necessary because they are not "statements" within
4  the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a
5  witness' assertions *and* they have been approved or adopted by the witness.  United States v.
6  Spencer, 618 F.2d 605, 606-607 (9th Cir. 1980); see also United States v. Griffin,  659 F.2d 932,
7  936-938 (9th Cir. 1981).

8          g.        All Investigatory Notes and Arrest Reports

9  The government objects to any request for production of all arrest reports, investigator's
10  notes, memos from arresting officers, and prosecution reports pertaining to Defendant.  Such
11  reports, except to the extent that they include Brady material or the statements of Defendant, are
12  protected from discovery by Rule 16(a)(2) as "reports . . . made by . . . Government agents in
13  connection with the investigation or prosecution of the case."

14  Although agents' reports may have already been produced to the defense, the government
15  is not required to produce such reports, except to the extent they contain Brady or other such
16  material.  Furthermore, the government is not required to disclose all evidence it has or to render
17  an accounting to Defendant of the investigative work it has performed. Moore v. Illinois, 408 U.S.
18  786, 795 (1972); see United States v. Gardner, 611 F.2d 770, 774-775 (9th Cir. 1980).  If the
19  United States intends to introduce TECS information at trial, discovery of the relevant TECS
20  reports will be made at least by the time of the filing of its trial memorandum.

21          h.        Expert Witnesses.

22  Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial
23  memorandum, the government will provide the defense with notice of any expert witnesses the
24  testimony of whom the government intends to use under Rules 702, 703, or 705 of the Fed. R. of
25  Evidence in its case-in-chief.  Such notice will describe the witnesses' opinions, the bases and the

26
27
28          10        08CR1190-JM

1 reasons therefor, and the witnesses' qualifications. Reciprocally, the government requests that the
2 defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

3            i.        <u>Information Which May Result in Lower Sentence</u>.

4 Defendant has claimed or may claim that the government must disclose information about
5 any cooperation or any attempted cooperation with the government as well as any other
6 information affecting Defendant's sentencing guidelines because such information is discoverable
7 under <u>Brady v. Maryland</u>. The government respectfully contends that it has no such disclosure
8 obligations under <u>Brady</u>.

9 The government is not obliged under <u>Brady</u> to furnish a defendant with information which
10 he or she already knows. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), <u>cert.
11 denied</u>, 479 U.S. 1094 (1987); <u>United States v. Prior</u>, 546 F.2d 1254, 1259 (5th Cir. 1977). <u>Brady</u>
12 is a rule of disclosure. There can be no violation of <u>Brady</u> if the evidence is already known to
13 Defendant. Assuming that Defendant did not already possess the information about factors
14 which might affect their respective guideline range, the government would not be required to
15 provide information bearing on Defendant's mitigation of punishment until after Defendant's
16 conviction or plea of guilty and prior to his sentencing date. "No [<u>Brady</u>] violation occurs if the
17 evidence is disclosed to the defendant at a time when the disclosure remains of value." <u>United
18 States v. Juvenile Male</u>, 864 F.2d 641 (9th Cir. 1988).

19     **2.**    **Discovery Related to Immigration History**

20 Defendant has requested or may request additional discovery concerning any audio
21 recording made of any hearing before an Immigration Judge ("deportation tape") and the Alien
22 Registration File ("A-File") associated with Defendant. The United States has requested or will
23 request any deportation tapes associated with Defendant and will produce them (if they exist) when
24 they arrive.

25 The United States objects to any request for discovery of Defendant's A-File. The
26 government is not aware of any controlling authority that stands for the proposition that the A-File

27

28                                                                  11                                  08CR1190-JM

is generally discoverable. The A-File contains information that is not discoverable, such as internal government documents and witness statements. See Fed. R. Crim. P. 16(a). Witness statements would not be subject to production until *after* the witness testifies and a *motion* is made by Defendant. See Fed. R. Crim. P. 26.2. Thus, the A-File associated with Defendant need not be disclosed.

Defendant has claimed or may claim that the A-File must be disclosed because: (1) it may be used in the United States' case-in-chief; (2) it material to his or her defense; and/or (3) it was obtained from or belongs to him or her. The United States will turn over documents it intends to use in its case-in-chief. Evidence is material under Brady only if there is a reasonable probability that had it been disclosed to the defense, the result of the proceeding would have been different. United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001). However, Defendant has not shown how documents in the A-File that have not already been disclosed are in any way material. Finally, Defendant does not own the A-File. It is an agency record.

That all said, should the Court order disclosure of the A-File, the United States will comply as it does in other cases.

**C.     DEFENDANT'S STATEMENTS SHOULD NOT BE SUPPRESSED**

Defendant moves for the suppression of Defendant's post-Miranda statement to agents, asserting that the statement was involuntary and that Defendant's Miranda waiver was not knowingly and voluntarily given. Defendant fails to show that the post-arrest waiver was not knowingly, voluntarily, and intelligently made. Defendant's motion to suppress statements should be denied without an evidentiary hearing.

**1.     Post-Miranda Statements**

After being placed under arrest, Defendant was questioned by CBP Officers. Defendant was advised of his Miranda rights, which Defendant acknowledged and waived, and then gave a statement. Defendant moves to suppress statements and requests that the government prove that all statements were voluntarily made, and made after a knowing and intelligent Miranda waiver.

Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine whether Defendant's statements were voluntary.

        a.        Knowing, Intelligent, and Voluntary Miranda Waiver

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of Miranda rights, and was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should not be found in the "absence of police overreaching").

A valid Miranda waiver depends on the totality of the circumstances, including the background, experience, and conduct of the defendant. North Carolina v. Butler, 441 U.S. 369, 374-75 (1979). To be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The Government bears the burden of establishing the existence of a valid Miranda waiver. North Carolina v. Butler, 441 U.S. at 373. In assessing the validity of a defendant's Miranda waiver, this Courts should analyze the totality of the circumstances surrounding the interrogations. See Moran v. Burbine, 475 U.S. at 421. Factors commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d 1070, 1074-75 (9th Cir. 1998) (en banc) (valid waiver because the 17 year old defendant did not have trouble understanding questions, gave coherent answers, and did not ask officers to notify parents), (2) the defendant's familiarity with the criminal justice system (see United States v. Williams, 291 F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was familiar with the criminal justice system from past encounters), (3) the explicitness of the Miranda waiver (see United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda waiver is "strong evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda rights were read to defendant twice and defendant

1    signed a written waiver), and (4) the time lapse between the reading of the Miranda warnings and
2    the interrogation or confession. See Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995)
3    (valid waiver despite 15-hour delay between Miranda warnings and interview). Furthermore, if
4    there are multiple interrogations, as occurred in this case, repeat Miranda warnings are generally
5    not required unless an "appreciable time" elapses between interrogations. See United States v.
6    Nordling, 804 F.2d 1466, 1471 (9th Cir. 1986).

7    Here, the officers scrupulously honored the letter and spirit of Miranda in carefully advising
8    Defendant of his Miranda rights prior to any post-arrest custodial interrogation. Based on the
9    totality of the circumstances, Defendant's statements should not be suppressed because his
10   Miranda waiver was knowing, intelligent, and voluntary.

11           b.      Defendant's Statements Were Voluntary

12   The inquiry into the voluntariness of statements is the same as the inquiry into the
13   voluntariness of a waiver of Miranda rights. See Derrick v. Peterson, 924 F.2d 813, 820 (9th Cir.
14   1990). Courts look to the totality of the circumstances to determine whether the statements were
15   "the product of free and deliberate choice rather than coercion or improper inducement." United
16   States v. Doe, 155 F.3d 1070, 1074(9th Cir. 1998)(en banc).

17   A confession is involuntary if "coerced either by physical intimidation or psychological
18   pressure." United States v. Crawford, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting United States
19   v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003)). In determining whether a defendant's
20   confession was voluntary, "the question is 'whether the defendant's will was overborne at the time
21   he confessed.'" Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir.), cert. denied, 540 U.S. 968
22   (2003) (quoting Haynes v. Washington, 373 U.S. 503, 513 (1963)). Psychological coercion
23   invokes no per se rule. United States v. Miller, 984 F.2d 1028, 1030 (9th Cir. 1993). Therefore,
24   the Court must "consider the totality of the circumstances involved and their effect upon the will
25   of the defendant." Id. at 1031 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973)).

26

27

28                                    14                08CR1190-JM

1   In determining the issue of voluntariness, this Court should consider the five factors under 18 U.S.C. § 3501(b). United States v. Andaverde, 64 F.3d 1305, 1311 (9th Cir. 1995). These five factors include: (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he or she was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he or she was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his or her right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. 18 U.S.C. § 3501(b). All five statutory factors under 18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily made. See Andaverde, 64 F.3d at 1313.

As discussed above, Defendant was read his Miranda rights pre-interview. After Defendant acknowledged his Miranda rights, a dialogue ensued between the CBP Officers and Defendant, whereupon Defendant decided to make a statement without having an attorney present. Defendant clearly understood his Miranda rights and agreed to waive those rights. See United States v. Gamez, 301 F.3d 1138, 1144 (9th Cir. 2002). Defendant's statements were not the product of physical intimidation or psychological pressure of any kind by any government agent. There is no evidence that Defendant's will was overborne at the time of his statements. Consequently, Defendant's motion to suppress his statements as involuntarily given should be denied.

**2.    There Is No Need for an Evidentiary Hearing**

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991); Crim. L.R. 47.1. The local rule

1  further provides that "the Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition."

No rights are infringed by the requirement of such a declaration. Requiring a declaration from a defendant in no way compromises Defendant's constitutional rights, as declarations in support of a motion to suppress cannot be used by the United States at trial over a defendant's objection. See Batiste, 868 F.2d at 1092 (proper to require declaration in support of Fourth Amendment motion to suppress); Moran-Garcia, 783 F. Supp. at 1271-74 (extending Batiste to Fifth Amendment motion to suppress). Moreover, Defendant has as much information as the United States in regards to the statements Defendant made. See Batiste, 868 F.2d at 1092. At least in the context of motions to suppress statements, which require police misconduct suffered by Defendant while in custody, Defendant certainly should be able to provide the facts supporting the claim of misconduct.

Finally, any objection that 18 U.S.C. § 3501 requires an evidentiary hearing in every case is of no merit. Section 3501 requires only that the Court make a pretrial determination of voluntariness "out of the presence of the jury." Nothing in section 3501 betrays any intent by Congress to alter the longstanding rule vesting the form of proof on matters for the court in the discretion of the court. Batiste, 868 F.2d at 1092 ("Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court.") (citation and quotation marks omitted).

The Ninth Circuit has expressly stated that a United States proffer based on the statement of facts attached to the complaint is alone adequate to defeat a motion to suppress where the defense fails to adduce specific and material facts. See Batiste, 868 F.2d at 1092. Moreover, the Ninth Circuit has held that a district court may properly deny a request for an evidentiary hearing on a motion to suppress evidence because the defendant did not properly submit a declaration pursuant to a local rule. See United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991); United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness,

clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); see also United States v. Walczak, 783 F. 2d 852, 857 (9th Cir. 1986) (holding that evidentiary hearings on a motion to suppress are required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to whether contested issues of fact exist). Even if Defendant provides factual allegations, the Court may still deny an evidentiary hearing if the grounds for suppression consist solely of conclusory allegations of illegality. See United States v. Wilson, 7 F.3d 828, 834-35 (9th Cir. 1993) (District Court Judge Gordon Thompson did not abuse his discretion in denying a request for an evidentiary hearing where the appellant's declaration and points and authorities submitted in support of motion to suppress indicated no contested issues of fact).

As Defendant in this case has failed to provide declarations alleging specific and material facts, the Court would be within its discretion to deny Defendant's motion based solely on the statement of facts attached to the complaint in this case, without any further showing by the United States. Defendant's allegation of a Miranda violation is based upon boilerplate language that fails to demonstrate there is a disputed factual issue requiring an evidentiary hearing. See Howell, 231 F.3d at 623.

As such, this Court should deny Defendant's motion to suppress and request for an evidentiary hearing.

**D.     NO OPPOSITION TO LEAVE TO FILE FURTHER MOTIONS**

The United States does not object to the granting of leave to allow Defendant to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

//
//
//

## V

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that Defendant's motions, except where not opposed, be denied.

DATED: June 13, 2008.

                                  Respectfully submitted,

                                  KAREN P. HEWITT
                                  United States Attorney

                                  s/ William A. Hall, Jr.
                                  WILLIAM A. HALL, JR.
                                  Assistant United States Attorney